**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

---

In re: Chapter 7

Kimberly Lynn Lantz and
Jason Anthony Lantz,

Bky. Case No.: 25-30541 (KAC)

Debtors.

---

**NOTICE OF MOTION AND MOTION**
**FOR RELIEF FROM THE AUTOMATIC STAY**

---

TO: Parties in interest pursuant to Local Rule 9013-3(a).

1. Coulee Bank ("Movant," "Coulee"), by and through its undersigned counsel, moves the court for the relief required below and gives this notice of hearing.

2. The Court will hold a hearing on this Motion on 27th day, May, 2026, at 1:30 pm, at Courtroom 8 West, Diana E. Murphy United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415.

3. All documents must be filed, served, and noticed, as applicable, not later than seven days before the hearing date. Therefore, all documents must be filed, served, and noticed, as applicable, no later than 20th day, May, 2026, which is seven (7) days before the time set for the hearing (including Saturdays, Sundays and holidays). UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.

4. This court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334, and Fed. R. Bankr. P. 5005. The proceeding is a core proceeding. The petition commencing this case was filed on February 26, 2025 ("Petition Date"). The case is now pending in this court.

5. The motion arises under 11 U.S.C. § 362(d)(1) and Fed. R. Bankr. P. 4001. This motion is filed under Fed. R. Bankr. P. 9014 and Local Rules 4001-1 and 9013 through 9019-3.

6. Movant requests relief from the automatic stay with respect to real property that is subject to a mortgage lien, effective immediately, notwithstanding Fed. R. Bankr. P. 4001(a)(3).

7. Debtors Kimberly Lynn Lantz and Jason Anthony Lantz ("Debtors") executed and delivered to Coulee a mortgage, in the original principal amount of $275,000.00, dated December 28, 2023, and recorded on December 29, 2023, as Document No. T283115, in the office of the Scott County Registrar of Titles ("Mortgage"). Monnens Aff. Exhibit A.

8. Debtors executed and delivered to Coulee a Promissory Note dated December 28, 2023 ("Note"), secured by the Mortgage. *Id.*

9. The Mortgage and Note encumber certain real property located in Scott County, Minnesota, legally described as follows:

> That part of Tract A, Registered Land Survey No. 99, Scott County, Minnesota, lying northeasterly of the following-described line:
>
> Beginning at a point on the southeasterly line of said Tract A, distant 970 feet northeasterly (as measured along said southeasterly line) of the most southerly corner of said Tract A; thence northwesterly, parallel with the southwesterly line of Tract A, to its intersection with the northwesterly line thereof and there terminating

commonly known as 1705 3rd Avenue W, Shakopee, Minnesota 55379 ("Real Property").

10. The current tax assessed value of the Real Property is $571,500.00. Monnens Aff. Ex. B.

11. In their petition, Debtors value the Real Property at $654,700.00 Docket 1 Schedule A/B.

12. The Mortgage provides failure to make payments due on the Mortgage is a condition of default, the occurrence of which gives Movant the right to proceed with foreclosure of the Mortgage. Ex. A, pg. 5.

13. Debtors are to pay $2,320.35 per month for the Mortgage payment. Monnens Aff. ¶ 3.

14. Debtors failed to make regular, timely, monthly post-petition Mortgage payments to Movant. *Id* ¶ 6; Form 4001-1.

15. As of May 5, 2026, the total balance on the Mortgage was $267,727.18. *Id.* ¶ 11.

16. Debtors failed to maintain insurance on the Real Property. *Id.* ¶ 8. Movant has had to pay for forced-place insurance at a cost of $2,412.35.

17. Debtors have not paid Movant for this expense. *Id.* This expense, and non-payment thereof, is a violation of the Mortgage agreement. Ex. A pg. 3.

18. Debtors have failed to pay property taxes for the Real Property. *Id.* ¶ 9. There are now approximately $20,041.00 in property taxes owing by Debtors. *Id.* This also violates the Mortgage agreement. Ex. A pg. 5.

19. As of May 5, 2026, the total of the post-petition payments, interest, fees, and forced-place insurance owed under the Mortgage was $8,872.20. *Id.* ¶ 10.

20. Coulee requests the Court terminate the automatic stay so that Coulee may protect its interest in the Real Property.

21. In order to protect its interest in the Real Property, Coulee must pursue its remedies to foreclose under Minnesota law. Coulee has and will incur legal fees and costs to protect and enforce its rights in the Real Property.

22. Cause exists for the Court to vacate the automatic stay imposed by 11 U.S.C. § 362(a) because Debtors failed to pay post-petition Mortgage payments.

WHEREFORE, pursuant to 11 U.S.C. § 362(d) Coulee Bank respectfully moves the Court for an Order:

1. Granting relief from the automatic stay imposed by 11 U.S.C. § 362(a) for the Real Property.
2. Determining that the 14-day stay under Fed. R. Bankr. P. 4001(a)(3) be waived so that this order for relief is effective immediately upon entry, for the Real Property.
3. For such other relief as the Court finds just and equitable.

GDO LAW

Dated: May 6, 2026

/s/ Christopher Olson

Christopher L. Olson (#0395191)
Linda K. Thompson (#0323755)
4770 White Bear Parkway
White Bear Lake, MN 55110
Phone: (651) 426-3249
Fax: (651) 426-9501
chrisolson@gdolaw.com
*Attorneys for Coulee Bank*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| In re: | Chapter 7 |
| Kimberly Lynn Lantz and<br>Jason Anthony Lantz, | Bky. Case No.: 25-30541 (KAC) |
| Debtors. | |

---

## VERIFICATION

---

I, Christopher Olson, being first duly sworn on oath, deposes and states as follows:

1. I am an attorney for Coulee Bank.

2. I have reviewed the foregoing Motion for Relief from the Automatic Stay and it is true and correct according to the best of my knowledge, information, and belief.

GDO LAW

Dated: May 6, 2026

/s/ Christopher Olson
Christopher L. Olson (#0395191)
Linda K. Thompson (#0323755)
4770 White Bear Parkway
White Bear Lake, MN 55110
Phone: (651) 426-3249
Fax: (651) 426-9501
chrisolson@gdolaw.com
lthompson@gdolaw.com
*Attorneys for Coulee Bank*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

Bky. Case No.: 25-30541 (KAC)
Chapter 7

Kimberly Lynn Lantz and
Jason Anthony Lantz,

Debtors.

**AFFIDAVIT IN SUPPORT OF MOTION FOR RELIEF FROM STAY**

TO: Parties in interest pursuant to Local Rule 9013-3.

I, Benjamin Monnens, hereby state the following:

1. I am a SVP and Business Banking Officer at Coulee Bank ("Movant," "Coulee") and I make this Affidavit in such capacity.

**REAL PROPERTY**

2. Attached as Exhibit A is a true and correct copy of the signed and recorded Mortgage and Note for this matter.

3. Debtors are to pay Coulee $2,320.35 per month for the Mortgage payment.

4. Monthly Mortgage payments are due on or before the 28th day of each and every month. Ex. A. pg. 10.

5. A completed Form 4001-1 detailing post-petition payments and missed payments is filed herewith.

6. Debtors have failed to make regular, timely, monthly post-petition Mortgage payments to Movant. Debtors are consistently 60-90 days in payment arrears, regularly pushing payments to the 87-89 day so as to stop foreclosure.

7. In October 2025, Debtors were current on Mortgage payments through August 28, 2025. Then Debtors failed to make a Mortgage payment until December 29, 2025. Debtors have been 60-90 days in arrears consistently, with late charges being assessed and monthly Mortgage payments being applied to interest only. Form 4001-1.

8. Further, Debtors failed to pay for insurance on the collateral. Coulee has had to pay for forced-place insurance at a cost of $2,412.35. Debtors have not paid Coulee for this expense. This expense, and non-payment thereof, is a violation of the Mortgage agreement. Ex. A pg. 3.

9. Further, Debtors have failed to pay property taxes for the collateral. There are now approximately $20,041.00 in property taxes owing by Debtors. This also violates the Mortgage agreement. Ex. A pg. 5.

10. With interest, fees, and forced-place insurance, as of May 4, 2026, the total balance of post-petition payments owed by Debtors under the Mortgage is $8,872.20. Form 4001-1.

11. As of May 4, 2026, the total balance owed on the Mortgage is $267,727.18.

12. Attached as Exhibit B is a true and correct copy of the Scott County property tax information for this Property.

13. Because Debtors failed to make Mortgage payments, pay for insurance, and pay property taxes, Movant seeks to lift the automatic stay. If the automatic stay is lifted, Movant will foreclose its Mortgage in accordance with the terms of the Mortgage. Exh. A.

[The remainder of this page is intentionally blank.]

Dated: 5/5/26

Benjamin Monnens
SVP, Business Banking Officer
Coulee Bank

ANDRIA MARIE JANSEN
Notary Public - Minnesota
My Commission Expires
January 31, 2030

Subscribed and sworn to before me on this 5 day of May, 2026.

Notary Public

LOCAL FORM 4001-1(a)
REVISED 09/25

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

In re: Kimberly Lynn Lantz and Jason Anthony Lantz, Case No.25-30541 (KAC)

Debtors. Chapter 7

**LOAN HISTORY**

Begin loan history from the date of the first default related to the current default amount that is claimed in the motion.

| | | | | CHARGES | | | | |
|---|---|---|---|---|---|---|---|---|
| Date payment due | Date payment received | Date to which payment applied (month/year) | Amount received from the Debtor(s) | Monthly amount due: Principal + Interest | Monthly amount due: Escrow | Amount due: Late fees | Amount due: Other charge* | Description of charge |
| | | | **See attached payment history** | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| **TOTALS:** | | | $59,368.75 | $63,021.41 | $2,412.35 | $1,037.19 | | |
| | | | (a) | (b) | (c) | (d) | (e) | |

* Any "Other charge" must be described, itemized by amount, and allowed under note and/or mortgage (e.g., inspection fee, appraisal fee, insurance, taxes, etc.).

| | |
|---|---|
| Default amount claimed in the motion.<br>Note: Total amount due (columns (b) + (c) + (d) + (e)) less amount received from the debtor(s) (column (a)) must equal the default amount claimed in the motion. | $7,102.20 |
| Attorneys' fees and filing fee for the motion, if allowed under note and/or mortgage, and sought by movant to resolve motion. | $1,770.00 |
| Escrow balance (amounts held for payment of taxes, insurance, etc.). | $ |
| Suspense account balance (amount of un-applied payments). | $ |

| | Posted | Effective | Due | Source | Transaction Description | Amount | Balance |
|---|---|---|---|---|---|---|---|
| | 04/27/2026 | 04/27/2026 | 01/28/2026 | Telephone Transfers | 345 - Telephone Transfer from DDA | ($2,550.00) | $267,272.18 |
| | 04/08/2026 | 04/08/2026 | 01/28/2026 | Generated | 804 - Late Charge Assessed | $116.02 | $267,272.18 |
| | 04/01/2026 | 04/01/2026 | 01/28/2026 | Manually Keyed-No Split | 224 - Attorney Fee Assessed | $68.00 | $267,272.18 |
| | 03/23/2026 | 03/23/2026 | 12/28/2025 | Telephone Transfers | 345 - Telephone Transfer from DDA | ($2,500.00) | $267,272.18 |
| | 03/11/2026 | 03/11/2026 | 12/28/2025 | Generated | 804 - Late Charge Assessed | $116.02 | $267,272.18 |
| | 02/27/2026 | 02/27/2026 | 11/28/2025 | Telephone Transfers | 345 - Telephone Transfer from DDA | ($2,600.00) | $267,272.18 |
| | 02/06/2026 | 02/06/2026 | 11/28/2025 | Generated | 804 - Late Charge Assessed | $116.02 | $267,272.18 |
| | 01/30/2026 | 01/30/2026 | 11/28/2025 | Manually Keyed-No Split | 224 - Attorney Fee Assessed | $167.00 | $267,272.18 |
| | 01/13/2026 | 01/13/2026 | 10/28/2025 | Telephone Transfers | 345 - Telephone Transfer from DDA | ($2,430.63) | $267,272.18 |
| | 01/08/2026 | 01/08/2026 | 10/28/2025 | Generated | 804 - Late Charge Assessed | $116.02 | $267,272.18 |
| | 12/29/2025 | 12/29/2025 | 09/28/2025 | Telephone Transfers | 345 - Telephone Transfer from DDA | ($2,600.00) | $267,272.18 |
| | 12/29/2025 | 12/29/2025 | 09/28/2025 | Manually Keyed-No Split | 224 - Attorney Fee Assessed | $685.50 | $267,272.18 |
| | 12/17/2025 | 12/17/2025 | | Rate Change Adjustments | 889 - Interest Rate Change | | $267,272.18 |
| | 12/09/2025 | 12/09/2025 | 09/28/2025 | Generated | 804 - Late Charge Assessed | $116.02 | $267,272.18 |
| | 12/01/2025 | 12/01/2025 | 09/28/2025 | Manually Keyed-No Split | 224 - Attorney Fee Assessed | $839.75 | $267,272.18 |
| | 11/07/2025 | 11/07/2025 | 09/28/2025 | Generated | 804 - Late Charge Assessed | $116.02 | $267,272.18 |
| | 10/09/2025 | 10/09/2025 | 09/28/2025 | Generated | 804 - Late Charge Assessed | $110.28 | $267,272.18 |
| | 10/02/2025 | 10/01/2025 | 08/28/2025 | Exception Item | 363 - Auto Transfer Credit(ACH) | ($2,461.37) | $267,272.18 |
| | 09/11/2025 | 09/11/2025 | 07/28/2025 | Telephone Transfers | 345 - Telephone Transfer from DDA | ($2,435.12) | $268,213.06 |
| | 09/10/2025 | 09/02/2025 | 07/28/2025 | Reversals | 960 - Generated Principal Reversal | $234.25 | $268,213.06 |
| | 09/10/2025 | 09/02/2025 | 07/28/2025 | Reversals | 923 - Late Charge Reversal | $114.77 | $267,978.81 |
| | 09/10/2025 | 09/02/2025 | 07/28/2025 | Reversals | 922 - Interest Payment Reversal | $2,086.10 | $267,978.81 |
| | 09/10/2025 | 09/10/2025 | 07/28/2025 | Manually Keyed-No Split | 394 - NSF Fee Assessed | $30.00 | $267,978.81 |
| | 09/10/2025 | 09/10/2025 | 07/28/2025 | Reversals | 919 - Generated Accrual Adjustment | $0.42 | $267,978.81 |
| | 09/08/2025 | 09/08/2025 | 08/28/2025 | Generated | 804 - Late Charge Assessed | $116.02 | $267,978.81 |
| T | 09/02/2025 | 09/02/2025 | 07/28/2025 | Captured from POD | 10 - Regular Payment | ($2,435.12) | $267,978.81 |
| | 08/08/2025 | 08/08/2025 | 07/28/2025 | Generated | 804 - Late Charge Assessed | $116.02 | $268,213.06 |
| T | 07/29/2025 | 07/29/2025 | 06/28/2025 | Captured from POD | 10 - Regular Payment | ($2,285.56) | $268,213.06 |
| | 07/09/2025 | 07/09/2025 | 06/28/2025 | Generated | 804 - Late Charge Assessed | $114.77 | $268,766.56 |
| T | 06/30/2025 | 06/30/2025 | 05/28/2025 | Captured from POD | 10 - Regular Payment | ($2,320.35) | $268,766.56 |
| T | 05/27/2025 | 05/27/2025 | 04/28/2025 | Captured from POD | 10 - Regular Payment | ($2,574.01) | $269,054.06 |
| | 05/09/2025 | 05/09/2025 | 04/28/2025 | Generated | 804 - Late Charge Assessed | $25.00 | $269,234.87 |
| | 05/01/2025 | 05/01/2025 | 04/28/2025 | Manually Keyed-No Split | 260 - Force Placed Insurance Assessed | $2,412.35 | $269,234.87 |
| T | 04/17/2025 | 04/17/2025 | 03/28/2025 | Captured from POD | 10 - Regular Payment | ($1,373.98) | $269,234.87 |
| | 04/17/2025 | 04/17/2025 | 03/28/2025 | Manually Keyed-No Split | 10 - Regular Payment | ($57.96) | $269,707.85 |

| Posted | Effective | Due | Source | Transaction Description | Amount | Balance |
|---|---|---|---|---|---|---|
| 04/17/2025 | 04/17/2025 | 03/28/2025 | Manually Keyed-No Split | 51 - Late Fee Payment | ($83.03) | $269,707.85 |
| 04/17/2025 | 04/17/2025 | 03/28/2025 | Manually Keyed-No Split | 51 - Late Fee Payment | ($58.06) | $269,707.85 |
| 04/17/2025 | 04/17/2025 | 03/28/2025 | Manually Keyed-No Split | 51 - Late Fee Payment | ($116.02) | $269,707.85 |
| 04/17/2025 | 04/17/2025 | 03/28/2025 | Manually Keyed-No Split | 51 - Late Fee Payment | ($116.02) | $269,707.85 |
| 04/08/2025 | 04/08/2025 | 03/28/2025 | Generated | 804 - Late Charge Assessed | $83.03 | $269,707.85 |
| 04/01/2025 | 04/01/2025 | 02/28/2025 | Captured from POD | 10 - Regular Payment | ($2,320.35) | $269,707.85 |
| 04/01/2025 | 04/01/2025 | 02/28/2025 | Manually Keyed-No Split | 51 - Late Fee Payment | ($57.96) | $271,268.80 |
| 04/01/2025 | 04/01/2025 | 02/28/2025 | Manually Keyed-No Split | 51 - Late Fee Payment | ($116.02) | $271,268.80 |
| 04/01/2025 | 04/01/2025 | 02/28/2025 | Manually Keyed-No Split | 51 - Late Fee Payment | ($116.02) | $271,268.80 |
| 03/24/2025 | 03/24/2025 | 01/28/2025 | Captured from POD | 10 - Regular Payment | ($2,552.39) | $271,268.80 |
| 03/11/2025 | 03/11/2025 | 01/28/2025 | Generated | 804 - Late Charge Assessed | $116.02 | $271,268.80 |
| 02/27/2025 | 02/27/2025 | 12/28/2024 | Captured from POD | 10 - Regular Payment | ($1,500.00) | $271,268.80 |
| 02/07/2025 | 02/07/2025 | 12/28/2024 | Generated | 804 - Late Charge Assessed | $116.02 | $271,268.80 |
| 02/04/2025 | 02/04/2025 | 12/28/2024 | Captured from POD | 10 - Regular Payment | ($900.00) | $271,268.80 |
| 01/06/2025 | 01/06/2025 | 10/28/2024 | Captured from POD | 10 - Regular Payment | ($4,488.11) | $271,268.80 |
| 12/10/2024 | 12/10/2024 | 10/28/2024 | Captured from POD | 10 - Regular Payment | ($500.00) | $271,268.80 |
| 12/09/2024 | 12/09/2024 | 10/28/2024 | Generated | 804 - Late Charge Assessed | $116.02 | $271,268.80 |
| 11/14/2024 | 11/14/2024 | 09/28/2024 | Captured from POD | 10 - Regular Payment | ($2,321.00) | $271,268.80 |
| 11/08/2024 | 11/08/2024 | 09/28/2024 | Generated | 804 - Late Charge Assessed | $116.02 | $271,268.80 |
| 10/09/2024 | 10/09/2024 | 09/28/2024 | Generated | 804 - Late Charge Assessed | $116.02 | $271,268.80 |
| 08/28/2024 | 08/28/2024 | 08/28/2024 | A.F.T. | 341 - Automatic Transfer from DDA | ($2,320.35) | $271,268.80 |
| 07/29/2024 | 07/29/2024 | 07/28/2024 | A.F.T. | 341 - Automatic Transfer from DDA | ($2,320.35) | $271,777.30 |
| 06/28/2024 | 06/28/2024 | 06/28/2024 | A.F.T. | 341 - Automatic Transfer from DDA | ($2,320.35) | $272,222.34 |
| 05/28/2024 | 05/28/2024 | 05/28/2024 | A.F.T. | 341 - Automatic Transfer from DDA | ($2,320.35) | $272,664.34 |
| 04/29/2024 | 04/29/2024 | 04/28/2024 | A.F.T. | 341 - Automatic Transfer from DDA | ($2,320.35) | $273,223.91 |
| 04/03/2024 | 04/03/2024 | 03/28/2024 | A.F.T. | 341 - Automatic Transfer from DDA | ($2,320.35) | $273,961.37 |
| 03/01/2024 | 03/01/2024 | 02/28/2024 | A.F.T. | 341 - Automatic Transfer from DDA | ($2,320.35) | $274,270.41 |
| 02/06/2024 | 02/06/2024 | 01/28/2024 | A.F.T. | 341 - Automatic Transfer from DDA | ($2,320.35) | $275,000.00 |
| 12/28/2023 | 12/28/2023 | 01/28/2024 | Multiple Entry | 15 - Loan Advance | $275,000.00 | $275,000.00 |
| 12/28/2023 | 12/28/2023 | 01/28/2024 | Manually Keyed-No Split | 220 - Satisfaction Fee Assessed | $159.00 | $0.00 |
| 12/28/2023 | 12/28/2023 | | Generated | 889 - Interest Rate Change | | $0.00 |

**Exhibit A**

**Receipt:#** 734752

**T283115**

MTG $46.00
ConsFee $5.00
MRT $632.50

Cert # 52722

Return to:
CARVER COUNTY
ABSTRACT & TITLE CO
411 N. CHESTNUT ST.
CHASKA MN 55318

Certified Filed and/or recorded on:
12/29/2023 8:28 AM
Office of the Registrar of Titles
Scott County, Minnesota
*Julie K. Hanson, Registrar of Titles*
*Cynthia M. Geis, Auditor Treasurer*

Lantz, Kimberly L. 1302892

# MORTGAGE

**RECORDATION REQUESTED BY:**
COULEE BANK
West Metro
1516 Losey Boulevard S
P.O. Box 845
La Crosse, WI 54601

**WHEN RECORDED MAIL TO:**
COULEE BANK
West Metro
1516 Losey Boulevard S
P.O. Box 845
La Crosse, WI 54601

---

**THIS MORTGAGE dated December 28, 2023, is made and executed between Jason A Lantz and Kimberly L. Lantz; Husband and Wife (referred to below as "Grantor") and COULEE BANK, whose address is 1516 Losey Boulevard S, P.O. Box 845, La Crosse, WI 54601 (referred to below as "Lender").**

*FKA Kimberly L. Cigeys*

**GRANT OF MORTGAGE.** **For valuable consideration, Grantor** mortgages and conveys to Lender, with power of sale, all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, **(the "Real Property") located in Scott County, State of Minnesota:**

**That part of Tract A, Registered Land Survey No. 99, Scott County, Minnesota lying Northeasterly of the following-described line:**

**Beginning at a point on the Southeasterly line of said Tract A, distant 970 feet Northeasterly (as measured along said Southeasterly line) of the most Southerly corner of said Tract A; thence Northwesterly, parallel with the Southwesterly line of Tract A, to its intersection with the Northwesterly line thereof and there terminating.**

**Torrens Property; Certificate No. 52722**

**The Real Property or its address is commonly known as 1705 3rd Ave W, Shakopee, MN 55379. The Real Property tax identification number is 27-111-001-0.**

**CROSS-COLLATERALIZATION.** In addition to the Note, this Mortgage secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon

such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable. If the Lender is required to give notice of the right to cancel under Truth in Lending in connection with any additional loans, extensions of credit and other liabilities or obligations of Grantor to Lender, then this Mortgage shall not secure additional loans or obligations unless and until such notice is given.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. This shall constitute an actual and present assignment, provided that the Grantor shall have a license to collect, but not prior to accrual, all of the Rents and to retain, use and enjoy the same unless and until an Event of Default as defined herein has occurred. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE AND THIS MORTGAGE. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this Mortgage as they become due and shall strictly perform all of Grantor's obligations under this Mortgage.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses, including attorneys' fees, consultants' fees, and costs which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the

Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Minnesota law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for the Existing Indebtedness referred to in this Mortgage or those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and reasonable attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of thirty (30) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain flood insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan. Flood insurance may be purchased under the National Flood Insurance Program, from private insurers providing "private flood insurance" as defined by applicable federal flood insurance statutes and regulations, or from another flood insurance provider that is both acceptable to Lender in its sole discretion and permitted by applicable federal flood insurance statutes and regulations.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Compliance with Existing Indebtedness.** During the period in which any Existing Indebtedness described below is in effect, compliance with the insurance provisions contained in the instrument evidencing such Existing Indebtedness shall constitute compliance with the insurance provisions under this Mortgage, to the extent compliance with the terms of this Mortgage would constitute a duplication of insurance requirement. If any proceeds from the insurance become payable on loss, the provisions in this Mortgage for division of proceeds shall apply only to that portion of the proceeds not payable to the holder of the Existing Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Mortgage or any Related Documents, including but not limited to Grantor's failure to comply with any obligation to maintain Existing Indebtedness in good standing as required below, or to discharge or pay when due any amounts Grantor is required to discharge or pay under this Mortgage or any Related Documents, Lender on Grantor's behalf may (but shall

not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon the occurrence of any Event of Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in the Existing Indebtedness section below or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**EXISTING INDEBTEDNESS.** The following provisions concerning Existing Indebtedness are a part of this Mortgage:

**Existing Lien.** The lien of this Mortgage securing the Indebtedness may be secondary and inferior to an existing lien. Grantor expressly covenants and agrees to pay, or see to the payment of, the Existing Indebtedness and to prevent any default on such indebtedness, any default under the instruments evidencing such indebtedness, or any default under any security documents for such indebtedness.

**No Modification.** Grantor shall not enter into any agreement with the holder of any mortgage, deed of trust, or other security agreement which has priority over this Mortgage by which that agreement is modified, amended, extended, or renewed without the prior written consent of Lender. Grantor shall neither request nor accept any future advances under any such security agreement without the prior written consent of Lender.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and

Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Mortgage:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default in Favor of Third Parties.** Should Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's ability to repay the Indebtedness or Grantor's ability to perform Grantor's obligations under this Mortgage or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of Grantor, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Existing Indebtedness.** The payment of any installment of principal or any interest on the Existing Indebtedness is not made within the time required by the promissory note evidencing such indebtedness, or a default occurs under the instrument securing such indebtedness and is not cured during any applicable grace period in such instrument, or any suit or other action is commenced to foreclose any existing lien on the Property.

**Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other

obligation of Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty that Grantor would be required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code. If notice to Grantor of the intended disposition of the Personal Property is required by law in a particular instance, such notice shall be deemed commercially reasonable if given to Grantor at least ten (10) calendar days prior to the date of intended disposition. Grantor shall pay on demand all costs and expenses, including but not limited to reasonable attorneys' fees and legal expenses, incurred by Lender in exercising these rights and remedies.

**Collect Rents.** Lender shall have the right to take possession of the Property and to collect and apply Rents, including amounts past due and unpaid, in accordance with applicable law and this Mortgage, including during the entire redemption period after foreclosure of this Mortgage. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Application of Rents.** Lender will first apply any Rents Lender receives in the order prescribed by Minn. Stat. Section 576.25, Subd. 2, as amended, including expenses for the Property's normal maintenance, and then, at Lender's sole discretion, to the Indebtedness and any other costs of managing, protecting and preserving the Property. All costs and expenses incurred by Lender in connection with the Property shall be for Grantor's account and Lender may pay such costs and expenses from the Rents. Lender, in its sole discretion, shall determine the application of any and all Rents received by it after payment of the foregoing expenses. All expenditures made by Lender under this Mortgage and not reimbursed from the Rents shall become a part of the Indebtedness secured by this Mortgage, and shall be payable on demand, with interest at the interest rate set forth in the Note from date of expenditure until paid.

**Appoint Receiver.** Lender, to the maximum extent permitted by law, shall be entitled, as a matter of right, to the appointment of a receiver of the Property, without notice or demand, and without regard to the adequacy of the security for the Indebtedness or the solvency of the Grantor, by an action separate from any foreclosure of this Mortgage pursuant to Minnesota Statutes Chapter 580 or pursuant to Minnesota Statutes Chapter 581, or as a part of the foreclosure action under said Chapter 581 (it being agreed that the existence of a foreclosure pursuant to said Chapter 580 or a foreclosure action pursuant to said Chapter 581 is not a prerequisite to any action for a receiver hereunder). The receiver, who shall be an experienced property manager, shall collect (until the Indebtedness is fully paid and satisfied and, in the case of a foreclosure sale, during the entire redemption period) the Rents, and shall manage the Property, execute leases within or beyond the period of the receivership if approved by the court and apply all rents, profits and other income collected by him in the order specified below. Notwithstanding the appointment of any receiver, Lender shall be entitled as pledgee to the possession and control of any cash, deposits or instruments at the time held by or payable or deliverable under the terms of any Related Documents to Lender. Lender shall have the right, at any time and without limitation, as provided in Minnesota Statutes, Section 582.03, to advance money to the receiver to pay any part or all of the items which the receiver should otherwise pay if cash were available from the Property and sums so advanced, with interest at the highest default rate set forth in the Note, shall be secured hereby, or if advanced during the period of redemption shall be part of the sum required to be paid to redeem from the sale. Any Rents received by the receiver hereunder shall be applied in the order prescribed by Minn. Stat. Section 576.25, Subd. 2, as amended, including but not limited to expenses for the Property's normal maintenance and reasonable receivership fees, and then against the Indebtedness if received prior to the commencement of a foreclosure, to be in such order as Lender may elect, and if received after the commencement of a foreclosure, to be applied to the amount required to be paid to effect a reinstatement prior to foreclosure sale, or, after a foreclosure sale to any deficiency and thereafter to the amount required to be paid to effect a redemption, all pursuant to Minnesota Statutes, Sections 580.30, 580.23 and 581.10, with any excess to be paid to Grantor. Provided, that if this Mortgage is not reinstated nor the Property redeemed as provided by said Sections 580.30, 580.23 or 581.10, the entire amount paid to Lender pursuant hereto shall be the property of Lender together with all or any part of the Property acquired through foreclosure.

**Foreclosure and Sale.** Lender may, and is hereby authorized and empowered to, foreclose this Mortgage by action or advertisement pursuant to the statutes of the State of Minnesota providing for such foreclosure. Power is expressly granted to Lender (1) to sell the Property at public auction and to convey the Property, in fee simple, to the purchasers at such sale, and (2) to pay, out of the proceeds of the sale, all of the Indebtedness secured by this Mortgage, with interest, and all legal costs and charges of the foreclosure including the maximum attorneys' fees permitted by law and Grantor agrees to pay all such costs, and charges and fees.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean

notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Mortgage, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage shall be sent to Lender's address, as shown near the beginning of this Mortgage. Any party may change its address for notices under this Mortgage by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors. Grantor understands that if Lender elects to foreclose by advertisement, no personal notice is required to be served upon Grantor. Grantor further understands that under the Constitution of the United States and the Constitution of the State of Minnesota it may have the right to notice and hearing before the Property may be sold and that the procedure for foreclosure by advertisement described above does not ensure that notice will be given to Grantor and neither said procedure for foreclosure by advertisement nor the Code requires any hearing or other judicial proceeding. GRANTOR HEREBY RELINQUISHES, WAIVES AND GIVES UP ANY CONSTITUTIONAL RIGHTS GRANTOR MAY HAVE TO NOTICE AND HEARING BEFORE SALE OF THE PROPERTY AND EXPRESSLY CONSENTS AND AGREES THAT THE PROPERTY MAY BE FORECLOSED BY ADVERTISEMENT AND THAT THE PROPERTY MAY BE DISPOSED OF PURSUANT TO THE CODE, ALL AS DESCRIBED ABOVE. GRANTOR ACKNOWLEDGES THAT GRANTOR IS REPRESENTED BY LEGAL COUNSEL; THAT BEFORE SIGNING THIS DOCUMENT, THIS SECTION AND GRANTOR'S CONSTITUTIONAL RIGHTS WERE FULLY EXPLAINED BY SUCH COUNSEL AND THAT GRANTOR UNDERSTANDS THE NATURE AND EXTENT OF THE RIGHTS WAIVED HEREBY AND THE EFFECT OF SUCH WAIVER.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Grantor's Copy of Documents.** Lender agrees to provide Grantor with a conformed copy of both the Note and this Mortgage at the time they are executed or within a reasonable time after recording this Mortgage.

**Governing Law. With respect to procedural matters related to the perfection and enforcement of Lender's rights against the Property, this Mortgage will be governed by federal law applicable to Lender and to the extent not preempted by federal law, the laws of the State of Minnesota. In all other respects, this Mortgage will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Wisconsin without regard to its conflicts of law provisions. However, if there ever is a question about whether any provision of this Mortgage is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision to be valid and enforceable. The loan transaction that is evidenced by the Note and this Mortgage has been applied for, considered, approved and made, and all necessary loan documents have been accepted by Lender in the State of Wisconsin.**

**Joint and Several Liability.** All obligations of Grantor under this Mortgage shall be joint and several, and all references to Grantor shall mean each and every Grantor. This means that each Grantor signing below is responsible for all obligations in this Mortgage.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Mortgage. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender

Exhibit A



in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be illegal, invalid, or unenforceable as to any person or circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other person or circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Mortgage. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Mortgage shall not affect the legality, validity or enforceability of any other provision of this Mortgage.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means Kimberly L. Lantz and Jason A. Lantz and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto, or common law, and shall also include pollutants, contaminants, polychlorinated biphenyls, asbestos, urea formaldehyde, petroleum and petroleum products, and agricultural chemicals.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Existing Indebtedness.** The words "Existing Indebtedness" mean the indebtedness described in the Existing Liens provision of this Mortgage.

**Grantor.** The word "Grantor" means Kimberly L. Lantz and Jason A. Lantz.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage. Specifically, without limitation, Indebtedness includes all amounts that may be indirectly secured by the Cross-Collateralization provision of this Mortgage.

**Lender.** The word "Lender" means COULEE BANK, its successors and assigns.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means the promissory note dated December 28, 2023, **in the original principal amount of $275,000.00** from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The maturity date of the Note is December 28, 2028.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

Exhibit A



**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**EACH GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND EACH GRANTOR AGREES TO ITS TERMS.**

**GRANTOR:**

X Kimberly Lantz
Kimberly L. Lantz

X [signature]
Jason A. Lantz

**This Mortgage was drafted by:**

**Denise K. Bast, Loan Processing Specialist**
**COULEE BANK**
**1516 Losey Boulevard S**
**La Crosse, WI 54601**

## INDIVIDUAL ACKNOWLEDGMENT

**STATE OF** Minnesota )
) **SS**
**COUNTY OF** Scott )

This instrument was acknowledged before me on December 28, 2023 by **Kimberly L. Lantz** * FKA Kimberly L. Claeys * **and Jason A. Lantz, Husband and Wife.**

Laura R[signature]
**Signature of Notarial Officer**

**Title (and Rank)**

**My commission expires** 1-31-2028

LAURA RYNDA
Notary Public
State of Minnesota
My Commission Expires
January 31, 2028

Exhibit A

Coulee Bank
BANK WITH CONFIDENCE

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $275,000.00 | 12-28-2023 | 12-28-2028 | 1302892 | [redacted] | [redacted] | BJM | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Kimberly L. Lantz
Jason A. Lantz
1705 3rd Ave W
Shakopee, MN 55379

**Lender:** COULEE BANK
West Metro
1516 Losey Boulevard S
P.O. Box 845
La Crosse, WI 54601

**Principal Amount: $275,000.00** **Date of Note: December 28, 2023**

**PROMISE TO PAY. Kimberly L. Lantz and Jason A. Lantz ("Borrower") jointly and severally promise to pay to COULEE BANK ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Hundred Seventy-five Thousand & 00/100 Dollars ($275,000.00), together with interest on the unpaid principal balance from December 28, 2023, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 8.000%, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.**

**PAYMENT. Borrower will pay this loan in 59 regular payments of $2,320.35 each and one irregular last payment estimated at $243,448.12. Borrower's first payment is due January 28, 2024, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on December 28, 2028, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. The payment amounts are based on an amortization over 240 monthly payments. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs.**

**INTEREST CALCULATION METHOD. Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in this Note.**

**RECEIPT OF PAYMENTS.** All payments must be made in U.S. dollars and must be received by Lender at:

COULEE BANK
1516 Losey Boulevard S, P.O. Box 845
La Crosse, WI 54601

Payments must be received consistent with the following payment instructions: All loan payments must be accompanied by the account number or payment coupon provided. Loan payments may also be made by the following methods: in person at any of our branch locations; Online Banking, phone banking, mobile banking or night deposit. Payments must be received by 5 p.m., Monday through Friday (excluding bank holidays) to be credited as of that date. Payments made at the night deposit drop will be credited as of the next business day.
Lender may modify these payment instructions, including changing the address for payments, by providing updated payment instructions to Borrower in writing. If a payment is made consistent with Lender's payment instructions but received after 5:00 PM Central Time on a business day, Lender will credit Borrower's payment on the next business day.

**PREPAYMENT PENALTY. Upon prepayment of this Note, Lender is entitled to the following prepayment penalty: In the event the Maker pays the loan in full prior to the maturity date, there will be a 2% pre-payment penalty on the unpaid principal balance if refinance with another financial institution. . Except for the foregoing, Borrower may pay all or a portion of the amount owed earlier than it is due.** Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. **All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: COULEE BANK, West Metro, 1516 Losey Boulevard S, P.O. Box 845, La Crosse, WI 54601.**

**LATE CHARGE.** If a payment is not made on or before the 10th day after its due date, Borrower will be charged **5.000% of the unpaid portion of the regularly scheduled payment or $25.00, whichever is greater.**

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by 4.000 percentage points. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false

or misleading at any time thereafter.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER. Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.**

**GOVERNING LAW. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Wisconsin without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Wisconsin.**

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $30.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** (To the extent not prohibited by the Wisconsin Consumer Act if this note is governed by said act) this note is secured by all existing and future security agreements and mortgages between lender and borrower, between lender and any indorser or guarantor of this note, and between lender and any other person providing collateral security for borrower's obligations, and any and all extensions, modifications, or renewal thereof, and payment may be accelerated according to any of them. I further acknowledge that future loans may be made to the borrowers, jointly or severally, which may be collateralized by the security given for this note and future security agreements and mortgages between the lender and the borrower, individually or jointly. I hereby waive, to the extent legally permitted, any requirement of notice of future loans to a borrower individually, which loans would be secured by any existing and /or future security agreements and mortgages. To the extent this note is governed by the Wisconsin Consumer Act this note shall be secured by all security agreements, mortgages and guaranties given to lender by me concurrent with the creation of this note.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** This Note benefits Lender and its successors and assigns, and binds Borrower and Borrower's heirs, successors, assigns, and representatives. If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. EACH BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

X ______________________________ Kimberly L. Lantz

X ______________________________ Jason A. Lantz

LaserPro, Ver. 23.2.20.003 Copr. Finastra USA Corporation 1997, 2023. All Rights Reserved. - WI F:\CFI\LPL\D20.FC TR-8174 PR-18

**SCOTT COUNTY PROPERTY AND TAXATION SERVICES**
**200 4TH AVENUE WEST**
SHAKOPEE, MN 55379
(952) 496-8115

**VALUATION NOTICE**

**2026 Values for Taxes Payable in 2027**

Exhibit B

**Property ID Number: 271110010**

Property tax notices are delivered on the following schedule:

Step **1** — **Valuation and Classification Notice**
Class: RES HSTD
Estimated Market value: $571,500
Homestead Exclusion: $20,333
Taxable Market Value: $551,167
***See Details Below.***

Step **2** — **Proposed Taxes Notice**
2027 Proposed Tax: *Coming November 2026*

Step **3** — **Property Tax Statement**
1st Half Taxes:
2nd Half Taxes:
Total Taxes Due in 2027:
*Coming March 2027*

**Taxpayer(s):** # 9935243
LANTZ JASON A
1705 3 AVE W
SHAKOPEE MN 55379

**Property Description:**
RLS 099 SHAKOPEE CITY Lot TCT Block 00A
| LYING NE OF LINE COM 970' NE COR MOST
S COR TCT A, NW PARALLEL WITH SW LINE TO INT NW LINE &
THERE

1705 3RD AVE W / SHAKOPEE

## The time to appeal or question your CLASSIFICATION or VALUATION is NOW!

It will be too late when proposed taxes are sent.

**Property Address**: 1705 3RD AVE W , SHAKOPEE MN 55379

## Your Property's Classification(s) and Values

| | **Taxes Payable In 2026 (2025 Assessment)** | **Taxes Payable In 2027 (2026 Assessment)** |
|---|---|---|
| *The assessor has determined your property's classification(s) to be:* | | |
| | RES HSTD | RES HSTD |
| | COMM/IND | COMM/IND |
| ☐ ***If this box is checked, your classification has changed from last year's assessment.*** | | |
| *The assessor has estimated your property's market value to be:* | | |
| **Estimated Market Value (EMV)** | **$560,300** | **$571,500** |
| *Several factors can reduce the amount that is subject to tax:* | | |
| Green Acres Value Deferral | | |
| Rural Preserve Value Deferral | | |
| Open Space Value Deferral | | |
| Platted Vacant Land Exclusion | | |
| Exclusion for Veterans with Disabilities | | |
| Mold Damage Exclusion | | |
| Homestead Market Value Exclusion | $20,846 | $20,333 |
| **Taxable Market Value (TMV)** | **$539,454** | **$551,167** |
| *The following values (if any) are reflected in your estimated and taxable market values:* | | |
| New Improvement Value | | |

*The classification(s) of your property affect the rate at which your value is taxed.*

## How to Respond

If you believe your valuation and property class are correct, it is not necessary to contact your assessor or attend any listed meetings.

If you have concerns about the information on this notice, **please contact your assessor**. If your questions or concerns are not resolved, more formal appeal options are available.

**Please read the back of this notice** for important information about the formal appeal process.

If questions contact:
Liz V
952-496-8468

Property information is available 8:00 AM to 4:30 PM Monday through Friday in the Property and Taxation Services Department or anytime at www.scottcountymn.gov.

### The following meetings are available to discuss or appeal your value and classification:

Local Board of Appeal and Equalization/Open Book
May 6, 2026 1:00pm - 7:00pm
SHAKOPEE'S OPEN BOOK
SCOTT COUNTY GOVERNMENT CENTER
200 4TH AVE W
SHAKOPEE, MN 55379

County Board of Appeal and Equalization Meeting
June 15, 2026 -
BY APPOINTMENT ONLY
200 4TH AVE W
SHAKOPEE, MN 55379
TO SCHEDULE A REQUIRED APPT. CALL 952-496-8973 BY MAY 15, 2026

Print Date: 04/28/26

# Appealing the Value or Classification of Your Property

## Informal Appeal Options - Contact Your Assessor

If you have questions or concerns, the assessor can help explain the details of your property's valuation and classification. Contact information for your assessor's office is on the other side of this notice.

Some jurisdictions choose to hold open book meetings to allow property owners to discuss their concerns with the assessor. If this is an option available to you, the meeting time(s) and location(s) will be indicated on the other side of this notice.

## Formal Appeal Options

If your questions or concerns are not resolved after meeting with your assessor, you have two formal appeal options:

### Option 1 - The Boards of Appeal and Equalization

You may appear before the Boards of Appeal and Equalization in person, through a letter, or through a representative authorized by you. The meeting times and locations are on the other side of this notice.

**You must have presented your case to the Local Board of Appeal and Equalization BEFORE appealing to the County Board of Appeal and Equalization.**

***Step 1 - Local Board of Appeal and Equalization***

If you believe your value or classification is incorrect, you may bring your case to the Local Board of Appeal and Equalization. Please contact your assessor's office for more information. If your city or township no longer has a Local Board of Appeal and Equalization (as indicated on the other side of this notice) you may appeal directly to the County Board of Appeal and Equalization.

***Step 2 - County Board of Appeal and Equalization***

If the Local Board of Appeal and Equalization did not resolve your concerns, you may bring your case to the County Board of Appeal and Equalization. Please contact the county assessor's office to get on the agenda or for more information.

### Option 2 - Minnesota Tax Court

Depending on the type of appeal, you may take your case to either the Small Claims Division or the Regular Division of Tax Court. You have until April 30(October 1 for manufactured homes assessed as personal property) of the year in which taxes are payable to file an appeal with the Small Claims Division or the Regular Division of Tax Court for your valuation and classification.

For more information, contact the Minnesota Tax Court:

**Phone:** 651-539-3260 or for MN Relay call 1-800-627-3529

**On the web:** www.mn.gov/tax-court

## Definitions

**Exclusion for Veterans With Disabilities** - Veterans with qualifying disabilities may be eligible for a valuation exclusion on their homestead property.

**Estimated Market Value** - This value is what the assessor estimates your property would likely sell for on the open market.

**Green Acres** - Applies to class 2a agricultural property that is facing increasing values due to pressures not related to the agricultural value of the land. This value is determined by looking at what comparable agricultural land is selling for in areas where there is no development pressure. The taxes on the higher value are deferred until the property is sold, transferred, withdrawn, or no longer qualifies for the program.

**Homestead Market Value Exclusion** - *The maximum exclusion amount has increased for assessment year 2024 and beyond.* Applies to residential homesteads and to the house, garage, and one acre of land for agricultural homesteads. The exclusion is a maximum of $38,000 at $95,000 of market value, and then decreases by nine percent for value over $95,000. The exclusion phases out for properties valued at $517,200 or more.

**New Improvements** - This is the assessor's estimate of the value of new or previously unassessed improvements you have made to your property within the past five years.

**Plat Deferment** - For land that has been recently platted (divided into individual lots) but not yet improved with a structure, the increased market value due to platting is phased in over time. If construction begins, or if the lot is sold before expiration of the phase-in period, the lot will be assessed at full market value in the next assessment.

**Rural Preserve** - Applies to class 2b rural vacant land that is part of a farm homestead or that had previously been enrolled in Green Acres, if it is contiguous to agricultural land enrolled in Green Acres. This value may not exceed the Green Acres value for tilled lands. The taxes on the higher value are deferred so long as the property qualifies.

**Taxable Market Value** - This is the value that your property taxes are actually based on, after all reductions.

*For more information on appeals, visit the Department of Revenue website: www.revenue.state.mn.us.*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| In re: | Chapter 7 |
| Kimberly Lynn Lantz and<br>Jason Anthony Lantz,<br><br>Debtors. | Bky. Case No.: 25-30541 (KAC) |

## MEMORANDUM OF LAW

Coulee Bank ("Movant") submits this memorandum in support of its Motion for Relief from the Automatic Stay ("Motion").

## STATEMENT OF FACTS

Movant relies on the statement of facts set forth in the Motion, the Affidavit of Benjamin Monnens, and the Exhibits (all filed herewith).

## STATEMENT OF LAW AND ARGUMENT

### I. MOVANT HAS STANDING TO BRING THIS MOTION FOR RELIEF FROM THE STAY TO FORECLOSE THE MORTGAGE.

A "party in interest" has standing to make a motion for relief from the stay, after notice and hearing. 11 U.S.C. § 362(d). The holder of a note and mortgage, or its authorized agent, has standing to bring a stay relief motion. *See, e.g., In re Jacobson,* 402 B.R. 359, 366 (Bankr. W.D. Wash. Mar. 6, 2009) (as modified Mar. 10, 2009). In the District of Minnesota, Local Bankruptcy Rule 4001-1 specifies the evidence the movant must provide to the court to prove standing for a motion for relief from stay, including a copy of the note, copy of the mortgage recorded in the land records, any assignments if the movant is not the original mortgagee, and any other evidence that the movant has authority to make the motion. Local R. Bankr. P. 4001-1(b)(1). *See also* LRBP 9013-2(a); LRBP

9013-2(d).

Here, Monnens Aff. Exh. A shows the executed and recorded Mortgage and Note that give Movant standing to seek relief from the automatic stay. The Mortgage was recorded in the county in which the Real Property is located, and Movant is the original mortgagee of the Mortgage. *Id.* Therefore, Movant provides sufficient evidence to show it is a party entitled to enforce the terms of the Mortgage, and has standing to bring this Motion for Relief.

## II. MOVANT IS ENTITLED TO RELIEF FROM THE AUTOMATIC STAY "FOR CAUSE" UNDER 11 U.S.C. § 362(d)(1)

Under Section 362(d)(1), relief from the automatic stay shall be granted upon request of a party in interest "for cause, including the lack of adequate protection of an interest in property of such party." 11 U.S.C. § 362(d)(1). Cause is "any reason whereby a creditor is receiving less than his bargain from a debtor and is without a remedy because of the bankruptcy proceeding." *In re Martens*, 331 B.R. 395, 398 (8th Cir. B.A.P. 2005) (internal citation omitted). Grounds for granting relief from the stay to the creditor "for cause" include if the debtor is not insuring the property or the debtor is failing to pay ongoing utilities, real estate taxes, or homeowners' association dues which lead to liens that affect the creditor's position. *See, e.g., In re Biltwood Properties LLC*, 473 B.R. 70 (Bankr. M.D. Pa. 2012). A debtor's failure to make post-petition plan payments and comply with the terms of a plan is grounds for a bankruptcy court to grant relief from the automatic stay "for cause." *Reinbold v. Dewey County Bank*, 942 F.2d 1304, 1306-07 (8th Cir. 1991).

### A. Cause Exists Based on Debtors' Failure to Maintain Insurance.

Further, Debtors failed to pay for insurance on the collateral. Coulee has had to pay for forced-place insurance at a cost of $2,412.35, and Debtors have not reimbursed Coulee for this expense. This expense, and non-payment thereof, is a violation of the Mortgage agreement. Ex. A pg. 3.

Courts recognize that failure to maintain adequate property insurance threatens the value of

secured creditors' collateral and constitutes cause for stay relief. In *In re Pond*, the court held that "for relief from automatic stay purposes, creditor's interest in real property is not being adequately protected where real estate taxes remain unpaid and the property is uninsured." *In re Pond*, 43 B.R. 522, 524 (Bankr. N.D. 1984). In *In re Ausherma*n, the court stated that "a debtor who does not have secured real estate adequately insured against fire and other potential loss is not entitled to continued use of the property and the protection of the automatic stay." *In re Ausherman*, 34 B.R. 393, 394 (Bankr. N.D. Ill. 1983). The rationale for requiring insurance was explained in *Matter of Holly's, Inc.*, which noted that "lack of property insurance may constitute cause to modify the stay" because "property insurance coverage is required because of the foreseeable risk to the secured creditor—the possible jeopardy to the collateral while it is under the control of a debtor." *Matter of Holly's, Inc.*, 140 B.R. 643, 698 (Bankr. W.D. Mich. 1992).

Here, Debtors have not paid insurance for the collateral, Movant is not adequately protected, and cause exists to lift the automatic stay.

**B. Cause Exists Based on Debtors' Failure to Pay Property Taxes.**

Finally, Debtors have failed to pay property taxes for the collateral. There are now approximately $20,041.00 in property taxes owing by Debtors. This also violates the Mortgage agreement. Ex. A pg. 5.

In Minnesota, property taxes are a superior lien on real property. Minn. Stat. 272.31. Debtors are not paying their property taxes, causing potential loss of Movant's security and cause to lift the stay. *In re Biltwood Properties*, LLC, 473 B.R. 70 (Bankr. M.D. Pa. 2012) (failure to comply with certain obligations could serve as cause to grant relief from the stay including the failure to pay real estate taxes resulting in a superior tax lien); *In re Harwood Hideout, Inc.*, 2005 WL 894828 (Bankr. D. N.D. Mar. 4, 2005) (failure to comply with certain other obligations could serve as cause to grant

relief from the stay including the failure to provide proof of insurance and failing to cure tax deficiencies). A "showing that debtor has failed to pay estate taxes may be sufficient to grant relief from automatic stay for cause." *In re Nattchase Associates Ltd. Partnership*, 178 B.R. 409, 416 (Bankr. E.D. VA. 1994) (citation omitted).

Here, Debtors have not paid property taxes, allowing over $20,000.00 in taxes – a lien superior to Movant's – to accrue. Movant is not adequately protected, and cause exists to lift the automatic stay.

**C. Cause Exists Based on Debtors' Failure to Make Monthly Mortgage Payments.**

Debtors' Mortgage requires Debtors make monthly mortgage payments directly to Movant. Ex. A. Debtors have failed to make regular, timely, monthly post-petition Mortgage payments to Movant. Monnens Aff. 2; Form 4001-1. Debtors have been 60-90 days in arrears consistently, with late charges being assessed and monthly Mortgage payments being applied to interest only. See Form 4001-1.

Debtors' failure to make adequate and timely post-petition mortgage payments is cause for an order for relief from the automatic stay so that Movant may foreclose its Mortgage on the Real Property in order to protect its security interests under state law.

**CONCLUSION**

There is cause to support a lift of the automatic stay, and the 14-day stay pursuant to Bankruptcy Rule 4001(a)(3) should be waived. Movant is entitled to an order for relief from the automatic stay to foreclose its Mortgage on the Real Property in order to protect its security interests under state law.

GDO LAW

Dated: May 6, 2026

/s/ Christopher Olson
Christopher L. Olson (#0395191)
Linda K. Thompson (#0323755)
4770 White Bear Parkway
White Bear Lake, MN 55110
Phone: (651) 426-3249
Fax: (651) 426-9501
chrisolson@gdolaw.com
*Attorneys for Coulee Bank*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| In re: | Chapter 7 |
| Kimberly Lynn Lantz and<br>Jason Anthony Lantz,<br><br>Debtors. | Bky. Case No.: 25-30541 (KAC) |

**ORDER GRANTING RELIEF FROM STAY**

This matter having come before this Court upon a Notice of Motion and Motion for Relief from the Automatic Stay imposed by 11 U.S.C. § 362(a), filed by Coulee Bank; and

It appearing from the affidavits of mailing filed with this Court that those entitled to notice received notice of the motion; and

It appearing no objection or request for hearing was timely filed with this Court as required by the notice; and

This Court being satisfied the creditor, Coulee Bank, is entitled to relief from the automatic stay; and

Based on the record, the Court finds grounds exist under 11 U.S.C. § 362(d) to warrant relief.

NOW, THEREFORE, IT IS HEREBY ORDERED:

1. The motion for relief from stay is granted as follows.
2. The automatic stay imposed by 11 U.S.C. § 362(a) is terminated such that Movant may exercise its rights and remedies under applicable nonbankruptcy law with respect to the following property:

> That part of Tract A, Registered Land Survey No. 99, Scott County, Minnesota, lying northeasterly of the following-described line:
>
> Beginning at a point on the southeasterly line of said Tract A, distant 970 feet northeasterly (as measured along said southeasterly line) of the most southerly corner of said Tract A; thence northwesterly, parallel with the southwesterly line of Tract A, to its intersection with the northwesterly line thereof and there terminating

commonly known as 1705 3rd Avenue W, Shakopee, Minnesota 55379.

3. Notwithstanding Fed. R. Bankr. P. 4001(a)(3), this order is effective immediately.

Dated:

____________________________________
Katherine A. Constantine
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

---

In re:

Chapter 7
Bky. Case No.: 25-30541 (KAC)

Kimberly Lynn Lantz and
Jason Anthony Lantz,

Debtors.

---

**UNSWORN CERTIFICATE OF SERVICE**

---

Linda Thompson, an attorney at GDO Law, states that on May 7, 2026, she caused the annexed Notice of Motion and Motion for Relief from Automatic Stay, Memorandum of Law, Proposed Order, Affidavit, and Exhibits to be mailed by first class mail, postage paid, to the following non-ECF participant by enclosing same in an envelope with first class mail postage and depositing same in the post office at White Bear Lake, Minnesota, addressed as follows:

Jason Anthony Lantz
Kimberly Lynn Lantz
1705 3rd Ave W
Shakopee, MN 55379

Nicholas Vivian
Royal Credit Union
1809 Northwestern Ave, #110
Stillwater, MN 55082

Internal Revenue Service
Centralized Insolvency
PO Box 7346
Philadelphia, PA 19101-7346

MN Dept of Revenue
Attn: Denise Jones
PO Box 64447
St. Paul, MN 55164-0047

M Health Fairview
Attn: Manager
1700 University Ave W
Saint Paul MN 55104-3791

Wings Credit Union
Attn: Manager
14985 Glazier Avenue
Apple Valley, MN 55124-653

James Jensen-Kowski
LifeBack Law Firm, PA
6445 Sycamore Court North
Maple Grove, MN 55369

Kevin Dobie,
Huntington National Bank
4500 Park Glen Rd, #300
Minneapolis, MN 55416

Scott County Property Tax
200 4th Ave W
Shakopee, MN 55379

Royal Credit Union
Attn: Bankruptcy Manager
PO Box 970
Eau Claire, WI 54702

Melissa Aguirre
1603 3rd Ave W
Shakopee MN 55379

Square Financial Services
c/o RMS
Attn: Manager
PO Box 5007
Fogelsville, PA 1805

Portfolio Recovery Assoc.
c/o Capital One Bank
Attn: Manager
PO Box 12914
Norfolk, VA 23541

Huntington National Bank
Attn: Manager
PO Box 89424
OPC856
Cleveland, OH 44101-8539

OneMain Fin. Grp LLC
Attn: Manager
PO Box 3251
Evansville, IN 47731

Verizon
AIS InfoSource LP as agent
Attn: Manager
PO Box 4457
Houston, TX 77210-4457

Shakopee Public Utilities
Attn: Manager
255 Sarazin Street
Shakopee MN 55379

Wells Fargo Bank, N.A.
Wells Fargo Card Services
Attn: Manager
PO Box 10438
MAC F8235-02F

Des Moines, IA 50306-0438

Cavalry SPV I, LLC
Attn: Manager
PO Box 4252
Greenwich, CT 06831

Discover Bank
Attn: Manager
PO Box 3025
New Albany, OH 43054-3025

Ame. Express Nat'l Bank
c/o Becket and Lee LLP
Attn: Manager
PO Box 3001
Malvern PA 19355-0701

Clicklease LLC
c/o Becket and Lee LLP
Attn: Manager
PO Box 3002
Malvern PA 19355-0702

Absolute Resolutions
Investments, LLC
c/o Absolute Res. Corp.
Attn: Manager
8000 Norman Ctr Dr, #350
Bloomington, MN 55437

LVNV Funding, LLC
Resurgent Capital Services
Attn: Manager
PO Box 10587
Greenville, SC 29603-0587

Quantum3 Group LLC Credit
Corp Solutions Inc
Attn: Manager
PO Box 788
Kirkland, WA 98083-0788

Minnesota Attorney General
445 Minnesota St, Suite 1400
St. Paul, MN 55101

US Attorney for the Dist of
Minnesota
600 US Courthouse
300 South 4th Street
Minneapolis, MN 55415

US Department of Justice
Attorney General of the US
950 Pennsylvania Ave NW
Rm 4400
Washington, DC 20530

US Trustee
1015 US Courthouse
300 S 4th Street
Minneapolis, MN 55415

Estate of Sandra K. Peterson
1705 3rd Ave W
Shakopee, MN 55379-1018

Executed on: May 7, 2026

Signed: /s/ Linda Thompson